UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD KRUMM,

               Plaintiff,

v.

                                      Case Number 07-12096
                                      Honorable Thomas L. Ludington

ADDISON MCKEE, INC.,

               Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO STRIKE, DENYING DEFENDANT'S MOTION TO STRIKE, AND DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS**

On May 15, 2007, Defendant Addison McKee Corporation ("Defendant") removed Plaintiff Richard Krumm's complaint to this Court. Plaintiff, a machinist formerly employed by American Boa, Incorporated ("ABI"),[1] was injured while using an allegedly defective "bender machine." Plaintiff's complaint advances causes of action for negligent repair and for breach of implied warranty of fitness.[2] In June and July of 2008, Defendant filed motions for summary judgment, to exclude Plaintiff's expert witness, and to strike Plaintiff's pleadings. Plaintiff also filed a motion to strike Defendant's pleadings.

On August 27, 2008, the Court held oral argument. In support of its motion for summary judgment, Defendant contends Plaintiff is unable to demonstrate that Defendant owed a duty to

---

[1] Plaintiff's complaint named ABI as a defendant, but the parties stipulated to voluntarily dismiss ABI with prejudice on June 21, 2007. Dkt. # 4.

[2] Plaintiff's complaint alleges additional causes of action for negligent design of the bender machine. Plaintiff's counsel acknowledged at the hearing that Plaintiff was not pursuing a defective design theory. Those causes of action alleged in the complaint are moot.

Plaintiff, that it breached that duty, or that Defendant's breach was the proximate cause of Plaintiff's injury. Although Defendant's arguments are primarily directed towards Plaintiff's negligent repair theory, Defendant maintains that Plaintiff's inability to demonstrate a causal relationship is also fatal to his breach of implied warranty claim. Plaintiff opposes the motion, interpreting the record to demonstrate a factual dispute with respect to duty, breach, and causation. Although Plaintiff emphasizes portions of his deposition, his testimony is insufficient to establish a triable issue of fact in light of the entire record. Ultimately, the record does not establish that Defendant was informed about the particular problem Plaintiff contends caused his injury. Moreover, Plaintiff has not offered any evidence, beyond mere conjecture, that Defendant negligently repaired the bender machine or that the machine was unfit for a commercial purpose. For those reasons, the Court will **GRANT** Defendant's motion for summary judgment.

Consequently, Defendant's motion to exclude Plaintiff's expert witness is moot. Therefore, the Court will **DENY** Defendant's motion as moot.

Finally, the parties filed cross-motions to strike certain pleadings related to the pending motions. For the reasons stated below, the Court will **DENY** the motions to strike.

I

Plaintiff was employed as a machinist at ABI, an automobile parts manufacturer. As a machinist, Plaintiff operated a model DB 75 bender machine, manufactured by Defendant. The bender machine manipulated straight metal tubes for use as exhaust pipes. Defendant sold the bender machine to ABI on September 10, 2004. Each of Plaintiff's claims rest on the allegation that the bender machine malfunctioned while Plaintiff operated it on November 9, 2004.

According to the parties, the machine operator would insert a straight metal tube over the

machine's mandril[3] and into the machine's collet.[4]   Once the metal tube is inserted, the machine operator initiates the bending process by either depressing a foot pedal or by using a hand held pendant. The entire process lasts approximately one minute.

Plaintiff alleges that the bender machine's collet malfunctioned. Allegedly, the collet began to tighten prematurely in the process, which increased the pressure required for Plaintiff to insert the metal tubes. In response, Plaintiff would exert additional pressure to fully insert the metal tube. Plaintiff maintains that the bender machine periodically lurched forward as a result of the pressure. Plaintiff testified that this occurred at least once before November 9, 2004. On the date of the incident, the machine kicked forward twice. The second time, Plaintiff was holding the metal tube when the machine lurched forward, exerting pressure on Plaintiff's shoulder and allegedly causing the injury.

Defendant's motion for summary judgment focuses on two factual components. First, Defendant asserts that Plaintiff can not demonstrate that Defendant, as the manufacturer, was aware of the problem with the collet. In support, Defendant relies primarily on the testimony of two of Defendant's employees, Plaintiff's deposition testimony, and the deposition testimony of Plaintiff's identified expert witness. Second, Defendant contends that Plaintiff is unable to demonstrate as a matter of fact that the alleged collet malfunction was the cause of his injury. The parties submitted excerpts of deposition testimony, service records, and expert opinion reports.

First, Defendant maintains it was not aware that the collet was malfunctioning. Plaintiff testified that his employer was informed about the problems he was experiencing with the bender

---

[3] Otherwise described as a shaft or bar the end of which is inserted into a workpiece to hold it during machining.

[4] Otherwise described as a collar or enclosing band.

machine. Plaintiff testified as follows:

> Q: And do you recall if there were any times that [Defendant] was called out specifically for the purpose of addressing this issue with the collet?
>
> A: I didn't . . . I don't recall. I wasn't in a position to make the phone calls, so I – that I don't know.
>
> Q: Do you recall, was there any discussion that included you where the folks at [ABI] – that [Defendant] ought to be called to address whatever this issue is with the collet?
>
> A: It was mentioned that they would – was going to be called. I can't guarantee that they were called. I know somebody came out within 30 days of that time frame, but I can't say that was the initial reason, because we were also starting up another part number.
>
> Q: And you don't recall any direct words from anybody from [Defendant] to you as to what to do or not do as it relates to anything particular to the collet?
>
> A: As that part – no.

*Plaintiff's Deposition* at 49:21-50:14; dkt. # 26-4 at 13-14. Plaintiff was unaware of whether ABI requested Defendant to service the collet. *Id.* at 49:21-50:3. Plaintiff did testify, however, that a technician made a service call to address the problem with the collet soon after his injury. *Id.* at 56:12-57:16.

Plaintiff's counsel primarily relied on the following excerpt from Plaintiff's deposition to demonstrate Defendant's knowledge of the collet malfunction:

> Q: Do you remember if – before your injury if there was any maintenance or work performed by [Defendant] on the collet itself?
>
> A: Prior to the injury?
>
> Q: Yes.
>
> A: I believe at one other time – one or two times they were there for other reasons and checked the collet for problems that we were having with it not adjusting and staying adjusted.

-4-

> Q: So you're telling me you do recall one time that they were there for something else, but he did look at the collet?
>
> A: One or two times, yes.

*Plaintiff's deposition* at 45:25-46:11; dkt. # 33-3 at 3-4. Plaintiff's counsel also offered the following testimony:

> Q: And was there some effort by [ABI] folks to adjust the collet so that it would remain open or –
>
> A: Not to remain open, no. I mean, I couldn't –
>
> Q: I mean not "remain open," I guess. But to open enough that the tube could be placed on without a problem?
>
> A: Yes. I mean, we were shown by [Defendant] what to do get it to adjust back and that's how we learned to keep it – try to keep it adjusted.
>
> Q: And tell me again. What did [Defendant] tell you to do when you encountered –
>
> A: Verbatim. I can't give you the exact –
>
> Q: Just give me the general –
>
> A: The general was, you know, you would be able to – you would check the fingers, make sure the fingers weren't wearing or too tight to begin with ...

*Plaintiff's deposition* at 48:11-25; dkt. # 33-3 at 4.

Defendant, on the other hand, emphasizes the absence of any testimony in the record to corroborate Plaintiff's assertion that Defendant was aware of a collet malfunction or service on the collet. First, Defendant's service manager, Brad Zimmerman ("Service Manager"), testified that he had never been informed about any mechanical problems with the collet. *Zimmerman Deposition* at 106:11; dkt. # 26-8 at 16. He also testified that service records do not reflect any maintenance issues associated with the collet and any documented problems are unrelated to the collet. *See e.g.*

*id.* at 53:14, 62:11; dkt. # 26-8 at 6, 8. Defendant's field service engineer, Larry Joseph ("Field Service Engineer"), testified that he did not recall repairing or servicing the collet. *Joseph Deposition* at 54:10-55:14; dkt. # 26-9 at 7.

The testimony of an ABI supervisor, Tim Maher ("ABI Supervisor"), was consistent with the testimony of Defendant's Service Manager and Field Service Technician. Dkt. # 26-5. The ABI Supervisor did not recall any problems or service associated with the collet. *Maher Deposition* at 29:11-30:4, dkt. # 26-5 at 5-6. The ABI Supervisor remembered service taking place on September 21 and 28 of 2004, but for reasons unrelated to the collet. *Id.* at 32:3-21.

Defendant also contends that the deposition testimony of Plaintiff's proposed expert witness, Dr. Robert E. Little ("Plaintiff's Expert"), supports the factual inference that Defendant lacked notice of any potential collet malfunction. For example, Plaintiff's Expert review of the record did not yield any evidence that Defendant had knowledge of a problem with the collet or that it had serviced the collet. *Little Deposition* at 29:2-25; dkt. # 26-6. Likewise, Plaintiff's Expert was unaware of any problems noted with the Y-axis, which Plaintiff contends could potentially be a source of the malfunction. *Id.* at 74:6-14. In the opinion of Plaintiff's Expert, problems with the collet or Y-axis could have been "diminish[ed]" by Defendant's technicians. *Id.* at 83:7-13.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and

draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

III

Plaintiff's negligence cause of action advances a theory of liability that Defendant negligently repaired the bender machine. Defendant asserts that Plaintiff is unable to demonstrate that Defendant was aware of the collet malfunction or that it negligently repaired the malfunction. Plaintiff's second claim, breach of implied warranty of fitness for a particular purpose, asserts that the bender machine, while not defective, was not fit for a commercial purpose. In support, Plaintiff

only offered the fact that an injury occurred as evidence that the bender machine was unfit.

A

A prima facie negligence claim requires a plaintiff to demonstrate that the defendant owed the plaintiff a duty, the defendant breached that duty, the defendant's breach was the proximate cause of the plaintiff's damages, and the plaintiff suffered damages. *Brown v. Brown*, 739 N.W.2d 313, 316-17 (Mich. 2007). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 317 (citation omitted). When parties contract to voluntarily assume an obligation, a common-law duty arises to perform the obligation with ordinary care. *Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 538 N.W.2d 424, 428 (Mich. Ct. App. 1995). With respect to proximate cause, a "plaintiff must show that there is a reasonable basis for concluding that it is more likely than not that conduct by the defendant was the cause of [the] plaintiff's injuries." *Hartsfield v. United Technologies Otis Elevator Co. Inc.*, 986 F.Supp. 449, 452 (E.D. Mich. 1997).

Defendant challenges Plaintiff's ability to offer any evidence that Defendant had knowledge of the collet malfunction before Plaintiff sustained an injury and, thus, the contention that Defendant owed Plaintiff any duty. Although Defendant's argument straddles two related arguments – duty and breach of duty – the express warranty contained in the contract established a duty. *See Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 538 N.W.2d 424, 428 (Mich. Ct. App. 1995). The salient inquiry is whether Plaintiff has advanced some evidence that Defendant did not fulfill its obligation – i.e. Defendant was aware of the problem with the collet and negligently repaired it. Upon considered review of the record submitted by the parties, Defendant correctly argues that Plaintiff is unable to offer any evidence that it had notice of the collet issues or that it negligently

repaired the collet.

Plaintiff acknowledged in his deposition that he did not have any direct knowledge that he or anyone notified Defendant of problems with the collet. While Plaintiff testified that he informed his superiors of problems with the collet before his injury, there is no indication that anyone at ABI ever notified Defendant. Additionally, Plaintiff argues that Defendant's undeveloped service records and the absence of telephone records infer that Defendant may have known of the collet malfunction, but never documented it. Plaintiff concedes Defendant's service records do not describe collet repairs, but he argues that the vague, cursory descriptions of service do not foreclose the possibility that Defendant serviced the collet. Plaintiff also points to the fact that Defendant does not keep records of problems reported by telephone, which indicates Defendant would not have recorded whether ABI requested service on the collet. Plaintiff's arguments, though possible, are not supported by the record and are conjecture.

Plaintiff has not identified testimony from any person, either an employee of ABI or Defendant, that indicates a problem with the collet was reported to Defendant. Nor has Plaintiff offered any exhibit documenting problems with the collet. Thus, summary judgment is proper with respect to any claim predicated on Defendant's negligent maintenance of the bender machine.

B

Defendant's motion should be granted for an alternative reason. A prima facie claim for negligence requires a "plaintiff . . . produce evidence sufficient to prove a causal connection between defendant's conduct and plaintiff's injuries." *Hartsfield v. United Tech. Otis Elevator Co.*, 985 F.Supp 449, 452 (E.D. Mich. 1997). Plaintiff has not offered any evidence, beyond mere speculation, that Defendant's repair of the collet was negligent. Although Plaintiff testified that Defendant

"checked the collet for problems," Plaintiff has not provided any evidence that the repair was performed in a negligent manner. The fact that Plaintiff sustained an injury is insufficient to establish a triable issue of fact.

Likewise, summary judgment in favor of Defendant is proper for Plaintiff's breach of implied warranty for a particular purpose, as well. To establish a prima facie claim for breach of implied warranty for a particular purpose, a plaintiff must demonstrate that a product was not reasonably fit for an anticipated purpose at the time it left the defendant's control and that the defect was the proximate cause of the resulting injury. Michigan Model Civil Jury Instructions § 25.22 (Institute of Continuing Legal Education ed., 2002) (*citing Prentis*, 365 N.W.2d at 176). "[W]hether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product itself is actionable-that something is wrong with it that makes it dangerous."

While Plaintiff maintains that he must not demonstrate the product is defective, *see Kenkel v. Stanley Works*, 665 N.W.2d 490, 496-97 (Mich. Ct. App. 2003), he is still required to show that "something is wrong." As discussed in the preceding paragraph, Plaintiff's injury, by itself, is insufficient to demonstrate that the bender machine was dangerous. Again, Plaintiff's offered proofs lack any reasonable basis for concluding that the bender machine operated in dangerous manner. Therefore, Defendant's motion for summary judgment should be granted.

C

Finally, the parties each filed motions to strike responsive pleadings. Plaintiff moved to strike Defendant's reply briefs in support of its motion for summary judgment and motion in limine as untimely under the Local Rule 7.1. Defendant moved to strike portions of Plaintiff's response brief to the motion for summary judgment because it relied on inadmissible evidence.

Federal Rule of Civil Procedure 12(f) vests a court with the authority to strike an "immaterial, impertinent, or scandalous matter" from any pleading. The local rules require reply briefs to be filed within seven days of a response brief. E.D. Mich. LR 7.1(d). When computing time for a responsive pleading, the day the pleading was filed, legal holidays, and weekend days are excluded for periods ten days or less. Fed. R. Civ. P. 6(a)(1-2).

Plaintiff filed his response to the motion in limine on July 1, 2008 and his response to the motion for summary judgment on July 3, 2008 . Defendant filed both reply briefs on July 14, 2008. In that period, July 5, 6, 12, and 13 were weekend days. Additionally, July 4, 2008 was a federally recognized holiday. Thus, the rules required Defendant to file a reply brief in support of the motion in limine on July 11, 2008 and a reply brief in support of the motion for summary judgment on July, 15, 2008. The Court will deny Plaintiff's motion to strike because one of Defendant's reply briefs was timely filed and one was filed only a day late. Although tardy, its delay is harmless.

With respect to Defendant's motion to strike, the Court will deny it for two reasons. Defendant urges the Court to strike portions because Plaintiff advances inadmissible evidence or assertions not supported by the factual record. First, Defendant had an opportunity to address Plaintiff's representation of the record in its reply brief. Second, the evidence, even if admissible, does not assist in addressing Defendant's motion for summary judgment. Thus, Defendant's motion should be denied.

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 26] is **GRANTED**.

It is further **ORDERED** that Defendant's motion to strike [Dkt. # 35] and Plaintiff's

motion to strike [Dkt. # 38] are **DENIED**.

It is further **ORDERED** that Defendant's motion to exclude Plaintiff's expert witness [Dkt. # 27] is **DENIED** as moot.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 5, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 5, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS